**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Naomi Altagracia Gonzalez Rodriguez, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>Walmart Inc.,<br><br>        Defendant. | Case No.: 1:22-cv-02991-JPO |

**DEFENDANT WALMART INC.'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS**

John R. Vales
Kelly L. Lankford
Sara Gates
DENTONS US LLP
1221 Avenue of the Americas
New York, NY 10020
Tel.: (212) 768-6700
Fax: (212) 768-6800
john.vales@dentons.com
kelly.lankford@dentons.com
sara.gates@dentons.com

*Attorneys for Defendant Walmart Inc.*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND .....................................................................................2

LEGAL STANDARD..................................................................................................4

ARGUMENT ..............................................................................................................5

      I.     PLAINTIFF DOES NOT HAVE STANDING TO
           SEEK INJUNCTIVE RELIEF AND CONCEDES
           THAT REMEDIES AT LAW ARE ADEQUATE...................................................5

      II.    PLAINTIFF HAS NOT PLAUSIBLY ALLEGED A DECEPTIVE
           PRACTICES OR FALSE ADVERTISING CLAIM ..............................................7

           A.    "Pain Relieving/Pain Relief" Is Not Materially Misleading.......................9

           B.    "Maximum Strength" Is Not Materially Misleading ................................11

           C.    "Up to 12 Hours" Is Not Materially Misleading.......................................12

           D.    "Easy to Apply" and "Stay-Put Flexible
                 Patch" Are Non-Actionable Puffery .........................................................15

           E.    Plaintiff Has Not Alleged a Viable Omission Claim ...............................17

      III.   PLAINTIFF'S BREACH OF EXPRESS WARRANTY CLAIM FAILS ............18

           A.    Plaintiff Failed to Satisfy a Statutory Prerequisite....................................18

           B.    Plaintiff Has Not Plausibly Alleged the Requisite
                 Elements of a Breach of Express Warranty Claim ...................................19

      IV.   PLAINTIFF'S UNJUST ENRICHMENT CLAIM FAILS...................................20

CONCLUSION...........................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson News, L.L.C. v. Am. Media, Inc.*,
  680 F.3d 162 (2d Cir. 2012)..................................................................................17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................5

*Ashour v. Arizona Beverages USA LLC*,
  No. 19 CIV. 7081 (AT), 2020 WL 5603382 (S.D.N.Y. Sept. 18, 2020)..................6

*Axon v. Florida's Nat. Growers, Inc.*,
  813 F. App'x 701 (2d Cir. 2020) ............................................................................8

*Barreto v. Westbrae Nat., Inc.*,
  518 F. Supp. 3d 795 (S.D.N.Y. 2021)....................................................................18

*Barton v. Pret A Manger (USA) Ltd.*,
  535 F. Supp. 3d 225 (S.D.N.Y. 2021)....................................................................19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................................5

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
  No. 17-CV-04570-LAK-KHP, 2017 WL 3727230 (S.D.N.Y. Aug. 11, 2017)....................6–7

*Berni v. Barilla S.p.A.*,
  964 F.3d 141 (2d Cir. 2020)....................................................................................6

*Brodsky v. Aldi Inc.*,
  No. 20 C 7632, 2021 WL 4439304 (N.D. Ill. Sept. 28, 2021)................................13

*Brown v. Daikin Am. Inc.*,
  756 F.3d 219 (2d Cir. 2014).....................................................................................5

*Casey v. Odwalla, Inc.*,
  338 F. Supp. 3d 284 (S.D.N.Y. 2018)......................................................................6

*Corsello v. Verizon New York, Inc.*,
  18 N.Y.3d 777 (2012) ............................................................................................21

*Cosgrove v. Blue Diamond Growers*,
  No. 19 CIV. 8993 (VM), 2020 WL 7211218 (S.D.N.Y. Dec. 7, 2020) .................18

*Cosgrove v. Oregon Chai, Inc.*,
    520 F. Supp. 3d 562 (S.D.N.Y. 2021) ..................................................................12

*Dashnau v. Unilever Mfg. (US), Inc.*,
    529 F. Supp. 3d 235 (S.D.N.Y. 2021) ...........................................................18, 20

*Davis v. Hain Celestial Grp., Inc.*,
    297 F. Supp. 3d 327 (E.D.N.Y. 2018) ...............................................................12

*de Lacour v. Colgate-Palmolive Co.*,
    No. 16-CV-8364 (KMW), 2019 WL 4359554 (S.D.N.Y. Sept. 12, 2019) ...........................20

*DiBartolo v. Abbott Lab's*,
    914 F. Supp. 2d 601 (S.D.N.Y. 2012) ...........................................................19, 20

*Dwyer v. Allbirds, Inc.*,
    No. 21-CV-5238 (CS), 2022 WL 1136799 (S.D.N.Y. Apr. 18, 2022) ...................................19

*Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*,
    400 F. App'x 611 (2d Cir. 2010) ....................................................................21

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013)................................................................8, 9, 12, 13

*Fink v. Time Warner Cable*,
    810 F. Supp. 2d 633 (S.D.N.Y. 2011) .................................................................16

*Geffner v. Coca-Cola Co.*,
    928 F.3d 198 (2d Cir. 2019)............................................................................12

*George v. Starbucks Corp.*,
    No. 19-CV-6185 (AJN), 2020 WL 6802955 (S.D.N.Y. Nov. 19, 2020) ..........................15, 16

*Georgia Malone & Co. v. Rieder*,
    19 N.Y.3d 511 (2012) ................................................................................21

*Green v. Covidien LP*,
    No. 18 CIV. 2939 (PGG), 2019 WL 4142480 (S.D.N.Y. Aug. 30, 2019) ..............................21

*Harris v. Pfizer Inc.*,
    No. 21-CV-6789 (DLC), 2022 WL 488410 (S.D.N.Y. Feb. 16, 2022) ..................................9

*Hesse v. Godiva Chocolatier, Inc.*,
    463 F. Supp. 3d 453 (S.D.N.Y. 2020)...............................................................6–7

*Jessani v. Monini N. Am., Inc.*,
    744 F. App'x 18 (2d Cir. 2018) ...................................................................8, 12

*Klausner v. Annie's, Inc.*,
　　No. 20-CV-08467 (PMH), 2022 WL 204356 (S.D.N.Y. Jan. 24, 2022) ...................................6

*Klestinez v. ACT Team*,
　　No. 6:21-CV-696-GLS-ATB, 2021 WL 4086128 (N.D.N.Y. Aug. 19, 2021).......................17

*Koch v. Greenberg*,
　　14 F. Supp. 3d 247 (S.D.N.Y. 2014)......................................................................................7

*Kommer v. Bayer Consumer Health*,
　　710 F. App'x 43 (2d Cir. 2018) ...............................................................................................5

*In re Livent, Inc. Noteholders Sec. Litig.*,
　　151 F. Supp. 2d 371 (S.D.N.Y. 2001).....................................................................................5

*Makarova v. United States*,
　　201 F.3d 110 (2d Cir. 2000)....................................................................................................5

*Marcavage v. City of New York*,
　　689 F.3d 98 (2d Cir. 2012)......................................................................................................7

*Maurizio v. Goldsmith*,
　　230 F.3d 518 (2d Cir. 2000)....................................................................................................8

*Mazella v. Coca-Cola Co.*,
　　No. 7-20-CV-05235-NSR, 2021 WL 2940926 (S.D.N.Y. July 12, 2021)..............................9

*Morrison v. Nat'l Austl. Bank Ltd.*,
　　547 F.3d 167 (2d Cir. 2008)................................................................................................4, 5

*Nelson v. MillerCoors, LLC*,
　　246 F. Supp. 3d 666 (E.D.N.Y. 2017) ...................................................................................21

*Nicosia v. Amazon.com, Inc.*,
　　834 F.3d 220 (2d Cir. 2016)....................................................................................................7

*Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank*,
　　85 N.Y.2d 20 (1995) ..............................................................................................................17

*Pauwels v. Deloitte LLP*,
　　No. 19-CV-2313 (RA), 2020 WL 818742 (S.D.N.Y. Feb. 19, 2020) ...................................21

*Petereit v. S.B. Thomas, Inc.*,
　　63 F.3d 1169 (2d Cir. 1995)....................................................................................................7

*Roach v. Morse*,
　　440 F.3d 53 (2d Cir. 2006)......................................................................................................7

*In re Scotts EZ Seed Litig.*,
No. 12 CV 4727 VB, 2013 WL 2303727 (S.D.N.Y. May 22, 2013) ....................................20

*Simington v. Lease Fin. Grp., LLC*,
No. 10 CIV. 6052 KBF, 2012 WL 651130 (S.D.N.Y. Feb. 28, 2012) ...................................20

*In re Sling Media Slingbox Advert. Litig.*,
202 F. Supp. 3d 352 (S.D.N.Y. 2016)....................................................................................17

*Sorin v. Folger Coffee Co.*,
No. 20-80897-CV, 2021 WL 5545292 (S.D. Fla. Mar. 5, 2021).......................................13, 14

*Stewart v. Riviana Foods Inc.*,
No. 16-CV-6157 (NSR), 2017 WL 4045952 (S.D.N.Y. Sept. 11, 2017) ................................2

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009)................................................................................................................6

*Tears v. Bos. Sci. Corp.*,
344 F. Supp. 3d 500 (S.D.N.Y. 2018).....................................................................................19

*Turk v. Rubbermaid Inc.*,
No. 21-CV-270 (KMK), 2022 WL 836894 (S.D.N.Y. Mar. 21, 2022) ...................................13

*Woodhams v. Pfizer, Inc.*,
No. 18-CV-3990 (JPO), 2021 WL 5304309 (S.D.N.Y. Nov. 15, 2021) ................................21

*Wynn v. Topco Assocs., LLC*,
No. 19-CV-11104 (RA), 2021 WL 168541 (S.D.N.Y. Jan. 19, 2021) ...................................18

**Statutes**

N.Y. Gen. Bus. Law § 349......................................................................................................4, 7

N.Y. Gen. Bus. Law § 350......................................................................................................4, 7

U.C.C. § 2-607........................................................................................................................18

**Rules and Regulations**

21 C.F.R. § 201.61..................................................................................................................10

21 C.F.R. § 330.1....................................................................................................................10

*External Analgesic Drug Products for Over-the-Counter Human Use; Tentative Final Monograph*, 48 Fed. Reg. 5852-01 (Feb. 8, 1983)........................................9, 10, 11, 20

Fed. R. Civ. P. Rule 12 ...........................................................................................................1

**Other Authorities**

Am. L. Prod. Liab. 3d § 23:2 (Westlaw May 2022 update) ...........................................................18

*Equate Lidocaine and Menthol Pain Relief Patch, 5 Count*, Walmart.com,
    https://www.walmart.com/ip/Equate-Lidocaine-and-Menthol-Pain-Relief-
    Patch-5-Count/529149652 (last visited June 17, 2022)...........................................................2

*Equate Maximum Strength Lidocaine Pain Relieving Patches, 6 Count*, Walmart.com,
    https://www.walmart.com/ip/Equate-Maximum-Strength-Lidocaine-Pain-Relieving-
    Patches-6-Count/121592299 (last visited June 17, 2022).......................................................2, 4

*Salonpas Maximum Strength Pain Relieving Gel-Patch, 6 ct*, Walmart.com,
     https://www.walmart.com/ip/Salonpas-Maximum-Strength-Pain-Relieving-
     Gel-Patch-6-ct/54902233 (last visited June 17, 2022)...........................................................12

*Temporarily*, Merriam-Webster,
     https://www.merriam-webster.com/dictionary/temporarily (last visited June 17, 2022) .......10

*Up To*, Cambridge Dictionary,
     https://dictionary.cambridge.org/us/dictionary/english/up-to (last visited June 17, 2022).....13

*Up To*, Merriam-Webster,
    https://www.merriam-webster.com/dictionary/up%20to (last visited June 17, 2022) ............13

Defendant Walmart Inc. ("Defendant" or "Walmart") respectfully submits this memorandum of law in support of its motion to dismiss plaintiff Naomy Altagracia Gonzalez Rodriguez's ("Plaintiff") complaint ("Complaint" or "Cmpl.") pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff's lawsuit is one of several that putative class action plaintiffs have filed in recent months regarding the labeling of adhesive lidocaine patches, sold over the counter at retail stores like Walmart. Like many others, Plaintiff blatantly misconstrues the product labels to concoct a misrepresentation that simply does not exist. And, critically, Plaintiff does not allege what she understood the statements on the labels to mean at the time of purchase, nor does she allege that she was actually misled. Instead, she recites a bevy of questionable sources—from unspecified online reviews to studies about different products—to prop up her claims based on her manufactured misrepresentation. These allegations do not suffice to state a plausible claim for deceptive practices, false advertising, breach of express warranty, or unjust enrichment.

As detailed below, Plaintiff's claims for relief fail for several reasons. *First*, with regard to Plaintiff's claim for injunctive relief, she does not have standing to seek such relief because she concedes that she would only purchase the products again in the future, conditionally, if she receives a guarantee. This is far too speculative to support a threat of imminent injury. And, in any event, Plaintiff also seeks monetary relief through several of her claims, thereby conceding that there are suitable remedies at law. *Second*, Plaintiff does not plausibly allege deceptive business practices or false advertising under New York General Business Law, because—putting Plaintiff's manufactured misrepresentation aside—no reasonable consumer would be materially misled by any of the five alleged statements. "Pain relieving" and "maximum strength" follow standards set by the U.S. Food and Drug Administration; "up to 12 hours" contains qualifying language that operates as a ceiling, not a floor; and "easy to apply" and "stay-put flexible" are too

subjective to be actionable.  Though Plaintiff uses the term "omissions" in her Complaint, she does not identify any material information omitted from the labels or allege that Walmart alone possessed knowledge of this information to conceal it.  *Third*, Plaintiff's claim for breach of express warranty fails for the same reasons, and because she failed to satisfy a statutory prerequisite.  *Finally*, Plaintiff's unjust enrichment claim, which is premised on the same allegations and duplicative of her other claims, cannot survive a motion to dismiss.  Accordingly, the Court should dismiss the Complaint in its entirety.

## FACTUAL BACKGROUND

This action concerns two adhesive patch products, containing lidocaine and menthol, that are made available to the general public over the counter by Walmart: (1) Equate Maximum Strength Lidocaine Pain Relieving Patch (the "MS Product"), and (2) Equate Lidocaine + Menthol Pain Relief Patch (collectively, the "Products").[1]  *See* Cmpl. ¶¶ 1, 4–5.  Plaintiff alleges that the labels for the Products are false and misleading, but a cursory review of the Complaint shows that Plaintiff's theory hinges on a distorted reading of the product labels.  *Id.* ¶¶ 3–5, 12–13.  Plaintiff picks out five different statements from the product labels: (1) "pain relieving/pain relief," (2) "maximum strength," (3) "easy to apply," (4) "stay-put, flexible patch," and (5) "up to 12 hours." *Id.* ¶¶ 3–4, 12.  But rather than reading these statements in context, as Plaintiff must, she deceptively combines the information to manufacture a single, distorted statement: the Products claim that they "provide 'pain relieving/pain relief,' that is 'maximum strength,' through an 'easy

---

[1] *See Equate Maximum Strength Lidocaine Pain Relieving Patches, 6 Count*, Walmart.com, https://www.walmart.com/ip/Equate-Maximum-Strength-Lidocaine-Pain-Relieving-Patches-6-Count/121592299 (last visited June 17, 2022); *Equate Lidocaine and Menthol Pain Relief Patch, 5 Count*, Walmart.com, https://www.walmart.com/ip/Equate-Lidocaine-and-Menthol-Pain-Relief-Patch-5-Count/529149652 (last visited June 17, 2022).  The Court may take judicial notice of the full product packaging, as Plaintiff relies on the labels throughout her Complaint and the authenticity of the packages are not in dispute.  *See Stewart v. Riviana Foods Inc.*, No. 16-CV-6157 (NSR), 2017 WL 4045952, at *6 (S.D.N.Y. Sept. 11, 2017).

to apply,' and 'stay-put, flexible patch' that will last 'up to 12 hours.'"  *Id.* ¶¶ 3–4, 12.  Based on this manufactured misrepresentation, Plaintiff claims the product labels are misleading and create a warranty that Walmart has breached.  *See id.* ¶¶ 3–5, 12–13, 22.

Plaintiff alleges that the product labels are misleading because "within a short time, the Products commonly fall off of consumers' bodies, thus depriving consumers of the advertised benefits."  *Id.* ¶¶ 5, 13.  Plaintiff also alleges that "maximum strength" is misleading because the Products contain 4% lidocaine when there are other lidocaine patches that contain 5% lidocaine, citing two links.  *Id.* ¶¶ 7 & n.2, 19 & n.12.  However, the "other" products Plaintiff refers to are not available to the general public and may only be obtained with the authorization of a physician, by prescription.  *See id.*  The Complaint alleges broadly that "reasonable consumers [] believe that when a product is represented as 'maximum strength' that there are no comparable products on the market that contain a greater dose," but notably does not allege that Plaintiff held this belief when she purchased the Products.  *Id.* ¶ 19.

Indeed, Plaintiff provides scant information about her understanding, purchases, and use of the Products.  Notably, Plaintiff does not identify what, specifically, she read before purchasing the Products, only referring to the "Products' marketing" generally.  *See id.* ¶ 38.  She also does not allege what she understood the statements in the marketing to mean, instead vaguely asserting that she believes that "products that claim to provide 'pain relieving/pain relief,' that is 'maximum strength,' through an 'easy to apply,' and 'stay-put, flexible patch' that will last 'up to 12 hours'" will actually do so, but she does not indicate what she understood the statements on the labels of these specific Products to mean.  *See id.*  For purchases, Plaintiff generally alleges that she purchased the Products in 2021 and 2022 at Walmart brick-and-mortar locations in New York.  *See id.*  But, critically, Plaintiff does not allege any facts about her *personal* use of the Products to

3

explain why they failed to live up to her expectations.  *See id.*  Instead, the Complaint relies solely on allegations derived from online reviews[2] and past conference presentations, online reports, and studies regarding other lidocaine products that are not at issue here.  *See id.* ¶¶ 14–17.

Through her Complaint, Plaintiff seeks both monetary and injunctive relief on behalf of a nationwide class and New York sub-class based on four claims: (1) violation of N.Y. Gen. Bus. Law § 349 for deceptive practices, (2) violation of N.Y. Gen. Bus. Law § 350 for false advertising, (3) breach of express warranty in violation of the state warranty laws of all 50 states, and (4) unjust enrichment.  *Id.* ¶¶ 43–44, 57–92.  However, Plaintiff concedes in the Complaint that, had Walmart not made the alleged misrepresentations, she "would not have been willing to purchase the Products."  *Id.* ¶ 39.  Plaintiff also admits that she would only purchase the Products in the future, conditionally, if they actually provided "'pain relieving/pain relief,' that is 'maximum strength,' through an 'easy to apply,' and 'stay-put, flexible patch' that will last 'up to 12 hours.'"  *Id.* ¶ 38. As detailed below, Plaintiff does not have standing to seek injunctive relief and her Complaint fails to state a plausible claim.  For these reasons, the Court should dismiss the Complaint in its entirety with prejudice.

## LEGAL STANDARD

"Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks and citation omitted), *aff'd*, 561 U.S. 247 (2010).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a

---

[2] Plaintiff cherry-picks four reviews (out of hundreds) from Walmart.com to support her allegation of product defects.  *See* Cmpl. ¶ 14.  As of this filing, the MS Product has nearly 500 reviews on Walmart.com.  *See supra* n.1.

preponderance of the evidence that it exists." *Id.* (internal quotation marks and citation omitted). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* But "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and "[courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 225 (2d Cir. 2014) (citations omitted). While the Court is generally required to accept a complaint's factual allegations as true, the Court need not "accept as truth conflicting pleadings that make no sense . . . or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405–06 (S.D.N.Y. 2001) (collecting cases).

## ARGUMENT

### I.   PLAINTIFF DOES NOT HAVE STANDING TO SEEK INJUNCTIVE RELIEF AND CONCEDES THAT REMEDIES AT LAW ARE ADEQUATE

It is axiomatic that "[a] plaintiff seeking to represent a class must personally have standing to pursue each form of relief sought." *Kommer v. Bayer Consumer Health*, 710 F. App'x 43, 44 (2d Cir. 2018). In the Complaint, Plaintiff seeks a variety of relief, including preliminary and permanent injunctive relief, monetary and treble damages, statutory damages, punitive damages,

and cost and fees.  *See* Cmpl. at p. 29.  For injunctive relief, Plaintiff "must show that [she] is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).  As the Second Circuit has recognized, "to maintain an action for injunctive relief, a plaintiff 'cannot rely on past injury ... but must show a likelihood that [s]he ... will be injured in the future."  *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020).  Here, Plaintiff does not have standing to seek injunctive relief on behalf of the putative class because she has not alleged an imminent threat of injury.

As Plaintiff concedes in the Complaint, had Walmart not made the alleged misrepresentations, she "would not have been willing to purchase the Products."  Cmpl. ¶ 39; *see also Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 299 (S.D.N.Y. 2018) (finding that "the claim that she would not have purchased the 'Odwalla Products had Defendants not misrepresented the contents and nature of their Products,' is effectively a concession that she does not intend to purchase the product in the future" (internal citation omitted)).  Plaintiff also admits that she would only purchase the Products, conditionally, in the future "[i]f the Products actually did provide 'pain relieving/pain relief,' that is 'maximum strength,' through an 'easy to apply,' and 'stay-put, flexible patch,' that will last 'up to 12 hours.'"  Cmpl. ¶ 38.  Without this guarantee, Plaintiff concedes that she will not purchase the Products again in the future and therefore is not under the threat of any injury.  *See id.*  Courts in this district have routinely rejected such allegations of conditional future harm as too speculative to support standing.  *See, e.g.*, *Klausner v. Annie's, Inc.*, No. 20-CV-08467 (PMH), 2022 WL 204356, at *4 (S.D.N.Y. Jan. 24, 2022); *Ashour v. Arizona Beverages USA LLC*, No. 19 CIV. 7081 (AT), 2020 WL 5603382, at *4 (S.D.N.Y. Sept. 18, 2020);

*Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 465 (S.D.N.Y. 2020); *Bernardino v. Barnes & Noble Booksellers, Inc.*, No. 17-CV-04570-LAK-KHP, 2017 WL 3727230, at *6 (S.D.N.Y. Aug. 11, 2017).  As a result, Plaintiff's sole basis for any claim to injunctive relief is her *past* purchases of the Products, which is wholly insufficient to support standing under Article III.  *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016); *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012).

Moreover, Plaintiff's claims for a variety of monetary damages doom her request for equitable relief.  *See* Cmpl. at p. 25.  It is well-settled that "injunctive relief where an adequate remedy at law exists is inappropriate."  *Petereit v. S.B. Thomas, Inc.*, 63 F.3d 1169, 1185 (2d Cir. 1995); *see also Roach v. Morse*, 440 F.3d 53, 56 (2d Cir. 2006) ("To obtain a permanent injunction, a plaintiff must succeed on the merits and show the absence of an adequate remedy at law and irreparable harm if the relief is not granted." (internal quotation marks and citation omitted)).  Through her claims under Section 349 and 350 and her breach of warranty claim, Plaintiff seeks a variety of monetary damages, including compensatory, trebled, and punitive damages.  Cmpl. ¶¶ 65, 76, 85.  Plaintiff cannot have it both ways and seek injunctive relief on one hand and claim that damages will make her whole on the other.  *See Koch v. Greenberg*, 14 F. Supp. 3d 247, 284 (S.D.N.Y. 2014) (Oetken, J.) (denying request for permanent injunction under New York General Business Law where remedies at law were available), *aff'd*, 626 F. App'x 335 (2d Cir. 2015).  For these reasons, the Court should dismiss Plaintiff's request for injunctive relief.

## II.     PLAINTIFF HAS NOT PLAUSIBLY ALLEGED A DECEPTIVE PRACTICES OR FALSE ADVERTISING CLAIM

New York's General Business Law prohibits the use of "[d]eceptive acts or practices" and "[f]alse advertising" "in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law §§ 349, 350.  "To make out a prima facie case under Section 349, a plaintiff must demonstrate that

(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000).  Courts consider the same elements for advertising under Section 350 claims.  *See id.* at 522.

To survive a motion to dismiss a Section 349 or 350 claim, Plaintiff must do more than allege that a product "label might conceivably be misunderstood by some few consumers." *Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018) (internal quotation marks and citation omitted).  Plaintiff must plausibly allege "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled by the relevant statements." *Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 704 (2d Cir. 2020) (internal quotation marks and citation omitted).  Where the allegations in the complaint are materially inconsistent with the evidence the plaintiff relies upon, such as the product labels, the Court may "easily conclude that Plaintiffs' claims lack the facial plausibility necessary to survive a motion to dismiss." *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013); *accord Axon*, 813 F. App'x at 704.  "It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink*, 714 F.3d at 741.

Plaintiff alleges throughout her Complaint that Walmart represents that the Products "provide 'pain relieving/pain relief,' that is 'maximum strength,' through an 'easy to apply,' and 'stay-put, flexible patch' that will last 'up to 12 hours.'" Cmpl. ¶¶ 3–4, 12.  But the product labels do not relay this specific representation as Plaintiff proffers—it is merely Plaintiff's distortion. *See* Cmpl. ¶¶ 4–5; *supra* n.1.  Indeed, two of the statements—"maximum strength" and "easy to apply"—do not even appear on one of the Products. *See* Cmpl. ¶¶ 4–5; *supra* n.1.  Rather, Plaintiff takes great pains to cobble together statements contained in various locations on the Products'

packaging, but in doing so, improperly singles out certain words and phrases and misconstrues them, taking them entirely out of context to manufacture a misrepresentation.  But "[a] plaintiff does not have a claim under the GBL just because she comes away from an advertisement with an incorrect impression." *Harris v. Pfizer Inc.*, No. 21-CV-6789 (DLC), 2022 WL 488410 (S.D.N.Y. Feb. 16, 2022).

As the Second Circuit has recognized, context is crucial in determining whether a reasonable consumer would have been misled by a particular statement.  *See Fink*, 714 F.3d at 742.  The Court must view each allegedly misleading statement in the context of the product as a whole.  *See Mazella v. Coca-Cola Co.*, No. 7-20-CV-05235-NSR, 2021 WL 2940926, at *3 (S.D.N.Y. July 12, 2021) ("[C]ontext is crucial when determining if a label is materially misleading, and that context includes information on the product's packaging along with the product itself." (internal quotation marks and citation omitted)).  Plaintiff's obvious misreading of the product packaging does not support her claims because, as detailed below, two of the statements identified by Plaintiff constitute non-actionable puffery and the remaining statements, viewed in context, would not materially mislead a reasonable consumer.

### A.   "Pain Relieving/Pain Relief" Is Not Materially Misleading

The descriptions on the front labels, which describe the contents of the Products as "Pain Relieving Patch" or "Pain Relief Patch," would not mislead a reasonable consumer because they simply state the purpose of the Products and comply with U.S. Food and Drug Administration ("FDA") regulations.  As Plaintiff alleges in the Complaint, the Products' active ingredient, an anesthetic called lidocaine, "prevents pain by blocking the signals at the nerve endings in the skin." Cmpl. ¶ 2; *see also External Analgesic Drug Products for Over-the-Counter Human Use; Tentative Final Monograph*, 48 Fed. Reg. 5852-01, 5867 (Feb. 8, 1983) (defining anesthetics and

analgesics like lidocaine as "topically (externally) applied drug[s] that relieve[] pain by depressing cutaneous sensory receptors"). FDA regulations provide requirements for the labeling of over-the-counter ("OTC") products, including a statement of identity on the principal display panel of an OTC product that indicates the "principal intended action(s) of the drug." 21 C.F.R. § 201.61(b). The permitted language for a statement of identity is found in the operative OTC drug monograph. 21 C.F.R. § 330.1(c)(1). For external OTC products, like those at issue here, the FDA directs labelers in the tentative final monograph to label an external OTC product containing lidocaine "as an 'external analgesic,' 'topical analgesic,' or 'pain relieving (insert dosage form, e.g., cream, lotion, or ointment).'" 48 Fed. Reg. at 5867. The Products comply with FDA regulations by stating "Pain Relieving Patch" or "Pain Relief Patch" prominently on the front of the labels. *See* Cmpl. ¶¶ 4–5; *supra* n.1. Reasonable consumers would not be misled by a product description that identifies what the product should be used for, in compliance with FDA regulations; rather, it would be misleading for the Products to *not* indicate that they should be used for pain relief.

To make the "Pain Relieving" and "Pain Relief" descriptions even more clear, the front labels of the Products also explain how the Products work: "Desensitizes aggravated nerves and temporarily relieves pain." Cmpl. ¶¶ 4–5; *supra* n.1. Plaintiff curiously ignores this statement and claims that the labels make a promise about a specific time period of pain relief provided, but this is simply untrue. *See* Cmpl. ¶¶ 3–5, 12. Each Product states that it "*temporarily* relieves pain," using the same suggested language offered in the operative tentative final monograph. *See* 48 Fed. Reg. at 5867. Reasonable consumers understand that the word "temporarily" means a brief or

limited time[3] and would not read the Products' labels to promise a specific amount of pain relief. For these reasons, "pain relieving/pain relief" does not support Plaintiff's claims.

### B.   "Maximum Strength" Is Not Materially Misleading

The use of "Maximum Strength" on the front label of one of the Products—not both, as Plaintiff alleges—also would not mislead a reasonable consumer because the statement is accurate on its face.  The strength of the active ingredient in the MS Product, "Lidocaine 4%," (*see* Cmpl. ¶¶ 4–5; *supra* n.1), is the *maximum amount* permitted in such OTC products.  *See* 48 Fed. Reg. at 5867.  Plaintiff, nonetheless, claims that "Maximum Strength" is misleading because of the existence of prescription lidocaine products that contain a higher concentration of lidocaine.  *See* Cmpl. ¶¶ 6–7, 19.  But a reasonable consumer picking an OTC pain relief product off the shelf at a Walmart store would not compare the product to medications that are not available OTC and can be obtained only with the permission of a prescribing physician.  Reasonable consumers understand the difference between OTC and prescription drugs and would not presume that an OTC product offers the strongest dosage available.  Plaintiff herself does not allege that, when she purchased the Products, she believed "Maximum Strength" to mean stronger than a prescription drug or the strongest ever available.  *See* Cmpl. ¶ 38.

Plaintiff's strained interpretation for purposes of her claim is simply unreasonable and unsupported by the MS Product's label.  The label does not indicate that the MS Product offers a stronger dose than a prescription drug or represent that it is the strongest available.  *See* Cmpl. ¶¶ 4–5; *supra* n.1.  Rather, the MS Product offers a specific comparison to another OTC product: "Compare to Salonpas® Maximum Strength Lidocaine Patch active ingredient.  *See id.*  The

---

[3] *See Temporarily*, Merriam-Webster, https://www.merriam-webster.com/dictionary/temporarily (last visited June 17, 2022) (defining "temporarily" as "during a limited time").

Salonpas product also contains 4 percent lidocaine, the same amount of lidocaine as Walmart's MS Product and the ceiling set by the FDA for such products.[4]  The MS Product label also indicates the strength of the active ingredient—4 percent lidocaine—on the front label directly below "Maximum Strength."  *See* Cmpl. ¶¶ 4–5; *supra* n.1.  Any consumer encountering the MS Product in a Walmart store will clearly see the amount of lidocaine that the product contains and can compare it to other products on the shelf, that are available to the general public over the counter.  The context of the purchase, and how OTC drug products are marketed and sold, cannot be ignored.  *See Geffner v. Coca-Cola Co.*, 928 F.3d 198, 200 (2d Cir. 2019) (considering the word, alleged to be misleading, in the context of the marketing for that type of product; *Fink*, 714 F.3d at 742 (stating that "context is crucial"); *Jessani*, 744 F. App'x at 19 (considering how a product is produced and priced to determine whether a statement on a product label would mislead reasonable consumers); *Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 335 (E.D.N.Y. 2018) (finding that the context of the purchase—from a local store, not a specialty stand-alone store—cut against the plaintiff's section 349 and 350 claims).  Plaintiff's unreasonable apples-to-oranges comparison to prescription products does not pass the plausibility test.

### C.   "Up to 12 Hours" Is Not Materially Misleading

Plaintiff's reliance upon the "up to 12 hours" direction on the front and back of the product labels also does not support her claims.  Plaintiff erroneously concludes that because the Products

---

[4]  *See Salonpas Maximum Strength Pain Relieving Gel-Patch, 6 ct*, Walmart.com, https://www.walmart.com/ip/Salonpas-Maximum-Strength-Pain-Relieving-Gel-Patch-6-ct/54902233 (last visited June 17, 2022).  As Plaintiff relied on the MS Product label—which incorporates this reference to the Salonpas product—in the Complaint, the Court may take judicial notice of the amount of the active ingredient in the Salonpas product.  *See also Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 562, 581 (S.D.N.Y. 2021) ("[A] court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination." (internal citation omitted)).

direct users to use one of the patches for "up to 12 hours," the label somehow assures that a single patch will "continuously adhere" for 12 hours. *See* Cmpl. ¶¶ 3–5, 8, 12–13. But this interpretation is implausible. "Up to" does not mean "at least" but is a qualifier that indicates a limit. *See Up To*, Merriam-Webster, https://www.merriam-webster.com/dictionary/up%20to (last accessed June 17, 2022) (defining "up to" "as a function word to indicate a limit or boundary"); *Up To*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/up-to (last visited June 17, 2022) (indicating that "up to" is "used to say that something is less than or equal to but not more than a stated value, number, or level"). The Second Circuit and district courts considering "up to" in the context of the reasonable consumer standard have routinely rejected plaintiffs' attempts to argue that "up to" means "at least" or operates as a guarantee. *See, e.g.*, *Fink*, 714 F.3d 739 at n.3 (holding that "up to 3 times the speed of most standard DSL packages and up to 100x faster than dial-up" cannot support the claims because "the phrase 'up to' would 'lead a reasonable consumer to expect that speeds could be less than the advertised "3x faster" and "100x faster" speeds.'" (quoting *Fink v. Time Warner Cable*, 837 F. Supp .2d 279, 283–84 (S.D.N.Y. 2011)); *Turk v. Rubbermaid Inc.*, No. 21-CV-270 (KMK), 2022 WL 836894, at *8 (S.D.N.Y. Mar. 21, 2022) (finding that the plaintiff's argument that a reasonable consumer would interpret "retains ice for *up to* 5 days at 90 degrees F" to mean "retains ice for *at least* 5 days at 90 degrees F" is "simply not plausible"); *Brodsky v. Aldi Inc.*, No. 20 C 7632, 2021 WL 4439304, at *5 (N.D. Ill. Sept. 28, 2021) ("Here, no reasonable consumer would understand the "up to" language to be a guarantee. This language is not a promise that the cannister will make that amount, but just that it can under certain circumstances."); *Sorin v. Folger Coffee Co.*, No. 20-80897-CV, 2021 WL 5545292, at *2 (S.D. Fla. Mar. 5, 2021) ("'Up to' a certain number of cups of coffee would lead a reasonable consumer to expect that the actual number of coffee cups produced could be less. 'Up

13

to' is not a guarantee that the number of cups will be reached.").

Plaintiff's strained view that "up to" operates as guarantee that an adhesive patch will "continuously adhere" for 12 hours is wholly unreasonable, especially in light of the larger context of the label and consumers' understanding of how sticky patches work.  *See* Cmpl. ¶¶ 4–5; *supra* n.1.  Consumers are directed in the "Directions" section of the label to: "Apply sticky side of patch to affected area. Use one patch for up to 12 hours."  *See supra* n.1.  The context of this statement makes it clear that it is simply a direction for use, akin to "do not use for more than 12 hours"— not an assurance for how long the sticky patch will adhere, or an assurance that it will *continuously* adhere for a specific amount of the time.  *See id.*  That "up to 12 hours" is a direction for use is bolstered by the fact that both the fronts and backs of each of the boxes indicate that the Products are for "temporary" pain relief, meaning lasting for a limited time.  *See id.*; *see also supra* n.3. Reasonable consumers exercising common sense would understand that a variety of factors could impact how long a patch with a single sticky side remains in place, including where it is placed (e.g., on a very mobile area, like a knee or elbow), by what the person is doing, and by the condition of each person's skin where the patch is applied.  Even considering "[s]tay-put flexible" on the front of the boxes, as Plaintiff suggests, the labels do not represent that the Products will "stay put" for "12 hours" or "stay put" for any amount of time.  *See* Cmpl. ¶¶ 4–5; *supra* n.1.  Plaintiff manufactures this representation by cherry-picking information from the label and mashing it together so that it is completely divorced from the context.  But the context cannot be overlooked. A reasonable consumer would understand that the Products can only be used for a limited time, but no more than 12 hours, and that there is no guarantee for how long the Products will adhere in each instance.

Critically, Plaintiff does not allege that the Products did not adhere to her body for a

particular amount of time. *See generally* Cmpl. ¶ 38. Instead, she bases her claim that "up to 12 hours" is misleading on a handful of unverified and questionable sources, including: (1) screenshots of unspecified product reviews on Walmart.com, (2) an FDA "report" on transdermal drug patches, which is actually a personal presentation that does not represent the views of the FDA,[5] (3) consumer reports to the FDA regarding *prescription* lidocaine patches, and (4) a study on *prescription* lidocaine patches. *See id.* ¶¶ 14–17. But unverified reports and studies regarding *other* products do not support Plaintiff's allegations with regard to Walmart's Products. Plaintiff does not allege that the Walmart's Products are the same as these other products or use the same technology for their adhesion and drug delivery. *See generally* Cmpl. Plaintiffs' allegations regarding the adhesiveness of other products does not support her claims.

### D.   "Easy to Apply" and "Stay-Put Flexible Patch" Are Non-Actionable Puffery

Additionally, of the five statements that Plaintiff identifies in her Complaint, two of the statements—"Easy to apply"[6] and "Stay-put flexible patch"—cannot provide the basis for a claim. It is well-settled that subjective claims about products that cannot be proven either true or false, known as puffery, are not actionable under Sections 349 or 350. *George v. Starbucks Corp.*, No. 19-CV-6185 (AJN), 2020 WL 6802955, at *2 (S.D.N.Y. Nov. 19, 2020) (quoting *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 159 (2d Cir. 2007)), *aff'd*, 857 F. App'x 705 (2d Cir. 2021). Such vague language is not likely to mislead reasonable consumers because consumers

---

[5] Plaintiff alleges in the Complaint that the FDA issued a report regrading transdermal drug patches. Cmpl. ¶ 15. But the cited link is to a personal presentation from an FDA employee, which states on the first slide of the presentation the following disclaimer: "Views expressed in this presentation are mine, and have not been adopted as regulatory policies by the Food and Drug Administration at this time." *See id.* n.6.

[6] Plaintiff misconstrues the product labels and claims that "Easy to apply" appears on both Products, when it clearly only appears as "Easy to apply and remove" on the front label of the MS Product. *See* Cmpl. ¶¶ 3–4, 12, 20.

would understand the statements to be an expression of the seller's opinion only so there is no danger of consumer deception. *Id.* "Courts have found statements to be puffery as a matter of law when the statements do not provide any concrete representations." *Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 644 (S.D.N.Y. 2011).

The use of "Easy to apply and remove" in a bullet point list on the front label of the MS Product is not actionable because it is too subjective and vague to be proven true or false. *See* Cmpl. ¶¶ 4–5; *supra* n.1. There is no metric to measure whether an adhesive patch is easy or difficult to apply, as the application would be subjective to the individual user. *Cf. Fink*, 810 F. Supp. 2d at 644 (noting that terms like "easiest" are classic examples of generalized puffery). Similarly, "Stay-put flexible patch" is not capable of measurement or being proven true or false. The statement does not specify how long a patch will "stay-put" or indicate how flexible it is. *See* Cmpl. ¶¶ 4–5; *supra* n.1. "Stay-put flexible patch" can only be understood as a general and vague description of the Products. But without any metric for measurement, Plaintiff cannot show that the statement is false or misleading. Notably, Plaintiff's Complaint repeats "Easy to apply" and "Stay-put flexible patch" over and over in her same refrain but does not allege that either of these two statements are false.[7] *See* Cmpl. ¶¶ 3–5, 8, 12–13, 20–21, 25–26, 29, 32, 34. Nor does she allege what she, personally, understood these statements to mean or that she was misled. *See id.* ¶¶ 38–39. She only alleges that the Products were not "easy to apply" or did not "stay-put" for "12 hours," but this is merely Plaintiff's distortion, not what the product labels state. *See* Cmpl. ¶¶ 4–5; *supra* n.1. Because the statements constitute non-actionable puffery, they do not support Plaintiff's Section 349 or 350 claims.

---

[7] Plaintiff also claims that reasonable consumers believe that the Products will "be sufficiently flexible to withstand regular daily activities" but this statement is not contained anywhere on the product labels. Cmpl. ¶ 13.

### E.   Plaintiff Has Not Alleged a Viable Omission Claim

To the extent that Plaintiff also alleges a deception by omission claim, this too fails. Notably, Plaintiff does not allege what, if any, information was omitted from the product labels, but alleges omissions generally referring to Defendant's "deceptive misrepresentations and omissions." Cmpl. ¶¶ 26–31, 33.  These general allegations do not suffice to even put Defendant on notice of what the purported omissions are, let alone state an omission claim.  *See Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 182 (2d Cir. 2012) (stating that Fed. R. Civ. P. 8 "requires factual allegations that are sufficient to give the defendants fair notice of what the ... claim is and the grounds upon which it rests." (quoting *Twombly*, 550 U.S. at 555)); *see also Klestinez v. ACT Team*, 6:21-CV-696-GLS-ATB, 2021 WL 4086128, at *5 (N.D.N.Y. Aug. 19, 2021) (noting that to satisfy the minimal requirements of Rule 8, a plaintiff "must provide brief, coherent statements giving notice of what the named defendant did or failed to do, and how those acts or omissions caused plaintiff injury."), *report and recommendation adopted*, No. 621-CV-696-GLS-ATB, 2021 WL 4084270 (N.D.N.Y. Sept. 8, 2021).

To plead an actionable omission claim, Plaintiff must allege that Walmart alone possessed material information and failed to provide that information to consumers.  *See Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (1995).  To state an omission-based claim, a plaintiff must "plausibly allege[ ] that the ... [d]efendants had knowledge of the [material information] and failed to disclose or actively concealed such information." *In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d 352, 359 (S.D.N.Y. 2016) (internal citation omitted).  The Complaint utterly fails to state any of the elements, as it does not allege that Walmart *alone* possessed any particular information about the Products, what that material information was, or that Walmart failed to disclose or actively concealed the information.  *See generally* Cmpl.

Therefore, Plaintiff has not alleged a viable omission claim.

## III.   PLAINTIFF'S BREACH OF EXPRESS WARRANTY CLAIM FAILS

Because Plaintiff has failed to allege that the product labels are likely to mislead a reasonable consumer, Plaintiff's breach of express warranty claim likewise fails because Plaintiff has not plausibly alleged that the product labels are misleading or deceptive.  *See, e.g.*, *Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 248–49 (S.D.N.Y. 2021) (dismissing claim for breach of express warranty); *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 806 (S.D.N.Y. 2021) (dismissing breach of express warranty claim); *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104 (RA), 2021 WL 168541, at *6 (S.D.N.Y. Jan. 19, 2021) (finding that the plaintiff's other claims, including for breach of warranty, that hinged on the same theory of misleading business practices failed as a matter of law); *Cosgrove v. Blue Diamond Growers*, No. 19 CIV. 8993 (VM), 2020 WL 7211218, at *3 (S.D.N.Y. Dec. 7, 2020) (dismissing the breach of warranty claim premised on the same contention that the defendant's labeling of the product was materially misleading).  The Court need not look any further in dismissing Plaintiff's breach of express warranty claim, but, in any event, Plaintiff's warranty claim, which Plaintiff purports to bring under the laws of all 50 states (Cmpl. ¶ 53), also fails for the additional reasons detailed below.

### A.   Plaintiff Failed to Satisfy a Statutory Prerequisite

The Court should dismiss Plaintiff's breach of express warranty claim for the threshold reason that she has failed to satisfy a statutory prerequisite.  Under the Uniform Commercial Code ("UCC"), "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."  U.C.C. § 2-607(3)(a).  All fifty states have adopted this provision of the UCC or substantially similar language.  *See* Am. L. Prod. Liab. 3d § 23:2 (Westlaw May 2022 update).  Plaintiff does not allege that she provided any notice to Defendant, let alone timely notice.  *See generally* Cmpl.  To the extent that Plaintiff

argues in opposition that the Complaint is sufficient notice, she has not alleged this in her Complaint, so the Court should not consider it. *See Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 246 (S.D.N.Y. 2021) ("Plaintiff argues in her opposition that the complaint filed in this case satisfies the notice requirement of N.Y. U.C.C. § 2-607(3)(a). This allegation does not appear in the Complaint, and a party may not amend its complaint through statements made in its motion papers.") Moreover, courts have largely rejected this theory. *See id.* (citing cases); *accord Dwyer v. Allbirds, Inc.*, No. 21-CV-5238 (CS), 2022 WL 1136799, at *9 (S.D.N.Y. Apr. 18, 2022).

### B. Plaintiff Has Not Plausibly Alleged the Requisite Elements of a Breach of Express Warranty Claim

Even considering Plaintiff's breach of express warranty allegations, the claim still fails on the pleading. "A successful breach of express warranty claim requires proof that such an affirmation or promise existed, that it was breached, and that plaintiff detrimentally relied on the warranty." *Tears v. Bos. Sci. Corp.*, 344 F. Supp. 3d 500, 512 (S.D.N.Y. 2018). The affirmation of fact or promise must have been "false or misleading when made." *DiBartolo v. Abbott Lab's*, 914 F. Supp. 2d 601, 625 (S.D.N.Y. 2012). Plaintiff's claim is predicated on five statements: (1) "pain relieving/pain relief," (2) "maximum strength," (3) "easy to apply," (4) "stay-put, flexible patch," and (5) "up to 12 hours." Cmpl. ¶ 78. Repeating her same manufactured refrain, Plaintiff claims the warranties were breached because the Products do not "provide 'pain relieving/pain relief,'" that is 'maximum strength,' through an 'easy to apply,' and 'stay-put, flexible patch' that will last 'up to 12 hours." *Id.* ¶ 84.

None of the five statements supports a claim for breach of express warranty, for many of the same reasons detailed above. Plaintiff has not alleged that the Products do not provide some pain relief, only alleging that the Products do not provide pain relief for 12 hours. *See, e.g.*, Cmpl. ¶ 24. But the product labels do not promise 12 hours of pain relief, as Plaintiff erroneously asserts.

*See* Cmpl. ¶¶ 4–5; *supra* n.1.  Plaintiff also cannot plausibly allege that the OTC Products are not

"maximum strength" when they offer the highest percentage of lidocaine permitted in such OTC

products.  *See id.*; 48 Fed. Reg. at 5867.  Further, there is no express warranty on the product labels

that the adhesive patches will "adhere for 12 hours," as Plaintiff blatantly misconstrues.  *See, e.g.*,

Cmpl. ¶ 13.  The Products merely provide directions for use, including a maximum allotted time

for use.  *See* Cmpl. ¶¶ 4–5; *supra* n.1.  This direction does not operate as an express warranty, but

a warning for users.  Additionally, "easy to use" and "stay-put flexible" are non-actionable puffery,

so these statements, too, cannot support a warranty claim.  *See In re Scotts EZ Seed Litig.*, No. 12

CV 4727 VB, 2013 WL 2303727, at *7 (S.D.N.Y. May 22, 2013).

Plaintiff's claim for breach of express warranty therefore fails because she has not

adequately pled that the Products do "not comport with the statements contained on the label."

*Dashnau*, 529 F. Supp. 3d at 249 (internal citation omitted).  Because Plaintiff has failed to state

a claim for breach of express warranty under New York law, her claims under the warranty statutes

of other states would also fail.[8]  *Cf. Simington v. Lease Fin. Grp., LLC*, No. 10 CIV. 6052 KBF,

2012 WL 651130, at *9 (S.D.N.Y. Feb. 28, 2012) (finding that there plaintiffs did not state a claim

under their respective state's statutes, they do not have standing to bring claims under other state

statutes).

## IV.   PLAINTIFF'S UNJUST ENRICHMENT CLAIM FAILS

Finally, based on the foregoing, the Court should also dismiss Plaintiff's unjust enrichment

claim, which arises under the same facts.  Plaintiff purports to bring her unjust enrichment claim

under New York law, *see* Cmpl. ¶ 91, which requires Plaintiff to plausibly allege that "(1) the other

---

[8] Plaintiff's warranty claims that seek to implicate the laws of all fifty states also would not survive
class certification.  *See, e.g.*, *de Lacour v. Colgate-Palmolive Co.*, No. 16-CV-8364 (KMW), 2019
WL 4359554, at *3 (S.D.N.Y. Sept. 12, 2019).

party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516 (2012) (internal citation omitted). As New York's Court of Appeals has pointed out, "unjust enrichment is not a catchall cause of action to be used when others fail." *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012). Rather, "[i]t is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Id.*

Plaintiff's unjust enrichment claim, here, does not differ in any material respect from her other claims. *See* Cmpl. ¶¶ 88–89. Plaintiff merely refers to the same allegations—"Defendant's unlawful conduct as described in this Complaint"—to allege her unjust enrichment claim. *Id.* However, as courts in this district, including this Court, have recognized, claims for unjust enrichment, even when plead in the alternative, cannot survive a motion to dismiss where the plaintiff fails to explain how her unjust enrichment claim is not merely duplicative of her other claims. *See, e.g.*, *Woodhams v. Pfizer, Inc.*, No. 18-CV-3990 (JPO), 2021 WL 5304309, at *5 (S.D.N.Y. Nov. 15, 2021) (Oetken, J.); *Pauwels v. Deloitte LLP*, No. 19-CV-2313 (RA), 2020 WL 818742, at *15 (S.D.N.Y. Feb. 19, 2020); *Green v. Covidien LP*, No. 18 CIV. 2939 (PGG), 2019 WL 4142480, at *9 (S.D.N.Y. Aug. 30, 2019); *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017). Furthermore, because unjust enrichment is an equitable remedy, Plaintiff's acknowledgement that monetary damages are adequate precludes her unjust enrichment claim. *See Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 400 F. App'x 611, 613 (2d Cir. 2010) ("Unjust enrichment is an equitable claim that is unavailable where an adequate remedy at law exists."). For these reasons, the Court should dismiss Plaintiff's unjust enrichment claim.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Defendant's motion to dismiss the

Complaint in its entirety with prejudice.

Dated: June 17, 2022                    Respectfully submitted,
    New York, NY

                                     By:    /s/ John R. Vales

                                          John R. Vales
                                          Kelly L. Lankford
                                        Sara Gates
                                          DENTONS US LLP
                                        1221 Avenue of the Americas
                                          New York, NY 10020
                                          Tel.: (212) 768-6700
                                          Fax: (212) 768-6800
                                          john.vales@dentons.com
                                          kelly.lankford@dentons.com
                                          sara.gates@dentons.com

                                        *Attorneys for Defendant Walmart Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, John R. Vales, hereby certify that on June 17, 2022, a true and correct copy of the foregoing document was served on all counsel of record who have consented to electronic service via the Court's CM/ECF system.

_____/s/ John R. Vales_____