UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NAOMY ALTAGRACIA GONZALEZ RODRIGUEZ, MOLLA BROWN, and THOMAS RODRIGUEZ, *individually on behalf of themselves and all others similarly situated*, <br><br>                                Plaintiffs, <br><br>                      -v- <br><br>WALMART INC., <br><br>                                  Defendant. | 22-CV-2991 (JPO) <br><br> OPINION AND ORDER |

J. PAUL OETKEN, District Judge:

Defendant Walmart Inc. markets and sells certain lidocaine patches and creams. Plaintiffs accuse Defendant of falsely representing on the packaging of those products that they (1) deliver a "maximum strength" dose of lidocaine and (2) with respect to the patches, function as a "stay-put flexible patch" that "lasts up to 12 hours." Plaintiffs' complaint therefore alleges unjust enrichment on behalf of themselves and a nationwide class (count 1), violation of consumer protection statutes in New York and nationwide, on behalf of themselves and the nationwide class (count 2); and violation of sections 349 and 350 of the New York General Business Law on behalf of themselves and a New York subclass (counts 3 and 4, respectively). Plaintiffs voluntarily dismissed their New York unjust enrichment claim without prejudice. (*See* ECF No. 27 at 24 n.12.) Pending before the Court is Defendant's motion to dismiss the amended complaint in its entirety. For the reasons that follow, that motion is denied.

I.       **Background**

The following facts are drawn from the amended complaint (ECF No. 16) and are assumed true for purposes of the pending motion to dismiss.

The products at issue here are two types of lidocaine patches ("Equate Pain Relieving Patches" and "Equate Lidocaine + Menthol Patches") and two types of lidocaine creams ("Equate Pain Relief Cream (Roll On)") and "Equate Pain Relieving Cream Lidocaine").  (*Id.* ¶ 1.)  All of the products indicate that they contain 4% lidocaine.  (*Id.* 3-6.)  Plaintiffs allege that they have purchased three of the four products, with no Plaintiff claiming to have purchased the Roll On product.  (*See id.* ¶¶ 10-12.)  The front packaging for the four products looks like this:

 

 

As relevant to Plaintiffs' claims, the front packaging of the "Equate Pain Relieving Patches" and the "Equate Pain Relief Cream (Roll On)" represents that each is "maximum strength."  The packaging of the "Equate Pain Relieving Cream Lidocaine" represents that it is "max strength."  The "Equate Lidocaine + Menthol Patches" is the only product of the four that does not carry a "maximum strength" label.  (*See* ECF No. 16 at 4.)  The packaging for both patch products represents that each is a "stay-put flexible patch" that "lasts up to 12 hours."

Lidocaine is a topical anesthetic that treats pain by blocking the transmission of pain signals from nerve endings in the skin to the spinal cord and brain.  (*Id.* ¶ 2.)  The amended complaint alleges that Defendant's products falsely represent that they offer a "maximum strength" dose of lidocaine because (1) there are other over-the-counter and prescription

lidocaine creams and patches that deliver a higher concentration or amount of lidocaine[1] and (2) the lidocaine patches do not contain a higher dose of lidocaine than competing patch products without the "maximum strength" label.  (*Id.* ¶¶ 5, 41, 42.)  It further alleges that the packaging for the patches is false and misleading because they systematically fail "by large margins" to adhere to users' bodies for 12 hours; fail to continuously relieve pain during that period because of the premature detachment; and are insufficiently flexible to withstand daily activities such as walking, stretching, and sleeping.  (*Id.* ¶¶ 27, 35-36.)

Plaintiffs filed this action on April 11, 2022, and amended their complaint on July 8, 2022, in light of Defendant's first motion to dismiss.  (ECF Nos. 1, 13, 16.)  On July 29, 2022, Defendant filed a motion to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (ECF No. 23.)

## II.    Legal Standard

A district court must dismiss a claim for lack of subject matter jurisdiction if it "lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *see also* Fed. R. Civ. P. 12(b)(1).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Makarova*, 201 F.3d at 113.  A motion to dismiss for lack of Article III standing challenges the subject-matter jurisdiction of a federal court and, accordingly, is properly brought under Federal Rule of Civil Procedure 12(b)(1).  *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 210 (2d Cir. 2020).

---

[1] Plaintiffs allege that other over-the-counter and prescription creams contain and deliver a higher concentration of lidocaine milligrams per gram of cream and that other over-the-counter and prescription patches deliver more lidocaine per square inch.  (ECF No. 16 ¶ 5.)

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint need not contain "detailed factual allegations," but it must offer something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In resolving a motion to dismiss, the court "must accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor." *Doe v. Indyke*, 457 F. Supp. 3d 278, 282 (S.D.N.Y. 2020) (citing *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014)).

## III.   Discussion

### A.   Standing: Equate Pain Relief Cream (Roll On) Claim

Defendant contends that Plaintiffs lack standing to bring claims relating to the Equate Pain Relief Cream (Roll On) because no Plaintiff alleges that they purchased the product. (*See* ECF No. 24 at 18.) Defendant's argument implicates two types of standing analysis: Article III standing and class standing. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 27 F. Supp. 3d 447, 481 (S.D.N.Y. 2014) ("[C]ourts in this district have recognized that the Second Circuit considers the questions of Article III, statutory, and class standing as distinct.").

#### 1.   Article III Standing

Article III standing requires that a plaintiff establish: (1) that she suffered an injury in fact that is concrete and particularized and actual or imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) that a federal court decision is likely to redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The crux of Defendant's argument is that Plaintiffs have alleged no injury stemming from the Roll On product and

therefore lack standing.  While Plaintiffs indeed allege no injury from the Roll On, that fact does

not eliminate their standing to bring this suit: "[T]o establish Article III standing in a class action

. . . for every named defendant there must be at least one named plaintiff who can assert a claim

directly against that defendant." *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,

693 F.3d 145, 159 (2d Cir. 2012).  "[A]t that point standing is satisfied and only then will the

inquiry shift to a class action analysis." *Id.*  Here, each named Plaintiff can assert a claim

directly against Walmart based on their purchase of at least one of the lidocaine products in

question.  This is sufficient to establish Article III standing, even if Plaintiffs seek to bring claims

on behalf of the putative class based on a product they did not purchase.  *Cf. Kacocha v. Nestle

Purina Petcare Co.*, No. 15-CV-5489 (KMK), 2016 WL 4367991, at *10 (S.D.N.Y. Aug. 12,

2016) ("In light of *NECA-IBEW*, the Court thinks it logical that Article III jurisdiction survives at

least modest variation among those products purchased or representations seen by the named

plaintiff on the one hand and the putative class members on the other.").

### 2.    Class Standing

Courts in this District generally take two approaches to determining whether a plaintiff

has sufficiently alleged class standing where an unpurchased product is involved: some courts

reserve the question for the class certification stage, *see, e.g.*, *O'Neill v. Standard Homeopathic

Co.*, 346 F. Supp. 3d 511, 528 (S.D.N.Y. 2018), while others conduct a similarity analysis to

determine whether the plaintiff's class standing allegations are sufficient to survive the motion to

dismiss stage.  *See, e.g.*, *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 562-63 (S.D.N.Y.

2016).  Because the latter is the majority view, *Akridge v. Whole Foods Mkt. Grp., Inc.*, No. 20

CIV. 10900, 2022 WL 955945, at *6 (S.D.N.Y. Mar. 30, 2022) (collecting cases), the Court

considers the similarity of the claims about the unpurchased Roll On to the other three lidocaine

products.

In a putative class action, "a plaintiff has class standing if he plausibly alleges (1) that he personally has suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *NECA-IBEW Health*, 693 F.3d at 162 (citations and internal quotation marks omitted). In cases where the named plaintiff accuses the defendant of misrepresentation, courts look to the "nature and content of the specific misrepresentation alleged" to determine whether the conduct implicates the "same set of concerns" between the named plaintiff and putative class members. *Id*.

Plaintiffs have sufficiently alleged class standing based on the Equate Pain Relief Cream (Roll On) for the purposes of this motion to dismiss: First, they allege that they suffered an actual injury as a result of Defendant's misrepresentations on the three products they collectively purchased: Plaintiff Gonzalez Rodriguez alleges that she purchased the Equate Pain Relieving Patches and the Equate Lidocaine + Menthol Patches; Plaintiff Brown the Equate Pain Relieving Patches and the Equate Pain Relieving Cream; and Plaintiff Rodriguez the Equate Pain Relieving Patches. (ECF No. 16 ¶¶ 10-12.) Second, Defendant's conduct with respect to those three products clearly implicates the same set of concerns that Plaintiffs raise with respect to the Equate Pain Relief Cream (Roll On): Like the Pain Relieving Patch and the Pain Relieving Cream (Lidocaine), the Roll On represents that it is maximum (or max) strength. And like all three of the other products, the Roll On represents that it contains 4% lidocaine. Therefore, while Defendant argues that the Roll On is distinct from the two patch products in terms of its label, directions, and total ingredients (including inactive ingredients), the amended complaint adequately alleges that the misrepresentation claimed with respect to the Roll On is sufficiently similar to the misrepresentation claimed for all three purchased products. The Court will,

however, permit Walmart to raise this issue again at the class certification stage, after the parties

have benefited from further discovery.  *See Buonasera*, 208 F. Supp. 3d at 563.

    Because Plaintiffs have preliminarily established both Article III and class standing in

relation to the Equate Pain Relief Cream (Roll On), the Court now turns to their substantive

claims.

    **B.**    **"Maximum Strength"**

    Plaintiffs plausibly allege that Defendant improperly represents that three of its products

— the Equate Pain Relieving Patches, the Equate Pain Relief Cream (Roll On), and Equate Pain

Relieving Cream Lidocaine ("the relevant products") — contain a "maximum strength" or "max

strength" dose of lidocaine, in violation of New York General Business Law (GBL) sections 349

and 350.

    Section 349 of the GBL provides a cause of action for any person injured by "[d]eceptive

acts or practices in the conduct of any business, trade or commerce or in the furnishing of any

service."  N.Y. Gen. Bus. Law § 349(a), (h).  Section 350 of the GBL prohibits "[f]alse

advertising in the conduct of any business, trade or commerce or in the furnishing of any service

in this state."  N.Y. Gen. Bus. Law § 350.  "To successfully assert a claim under either section, a

plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2)

materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive

act or practice."  *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (citation omitted).

Misleading conduct encompasses acts "likely to mislead a reasonable consumer acting

reasonably under the circumstances."  *Id*.  "It is well settled that a court may determine as a

matter of law that an allegedly deceptive advertisement would not have misled a reasonable

consumer," *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020), but "this

inquiry is generally a question of fact not suited for resolution at the motion to dismiss stage," *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 96 (S.D.N.Y. 2021) (collecting cases).

Defendant contests Plaintiffs' GBL claims regarding the patch product by arguing that the "maximum strength" language is not materially misleading and that Plaintiffs' claims should be rejected as a matter of law.  (*See* ECF No. 24 at 9-13.)  But Plaintiffs adequately allege that Defendant's packaging is likely to mislead a reasonable consumer acting reasonably under the circumstances.  First, it is plausible that a reasonable consumer would understand "maximum strength" to mean that the patch product contains the maximum amount of lidocaine available on the market for that type of product.  *See Stevens v. Walgreen Co.*, No. 21-CV-10603 (JPO), 2022 WL 3681279, at *5 (S.D.N.Y. Aug. 24, 2022).  The amended complaint raises a plausible inference that that is not the case, because there are prescription-strength patches that deliver up to a 5% dose of lidocaine, as well as over-the-counter patches that deliver a higher dose than Defendant's products (360 milligrams versus 560 milligrams).  (ECF No. 16 ¶¶ 37, 41; No. 27 at 5).  Defendant argues in response that: (1) prescription-strength patches are not proper comparators and (2) Plaintiffs have cited erroneous calculations in support of their allegations that other over-the-counter patch products contain more lidocaine.  Such fact-intensive disputes are not appropriate for resolution at the motion-to-dismiss stage.  See *Stevens*, 2022 WL 3681279, at *5.

As for the Pain Relieving Cream Lidocaine, Defendant argues that Plaintiffs do not properly allege any material misrepresentation because the packaging states that it is not "**maximum** strength," but rather "**max** strength" — and Plaintiffs' substantive misrepresentation arguments reference the phrase "maximum strength."  (ECF No. 24 at 17-18; No. 27 at 9 n.11.)  For example, Brown alleges that she "relied on the 'maximum strength' representation" on the

packaging of the "Lidocaine Products" in making her purchase.  (*See* ECF No. 16 ¶ 11.)

Defendant frames too fine a distinction: a natural reading of Plaintiffs' allegations underscores

that their arguments about "maximum strength" necessarily extend to the phrase "max strength,"

especially because Plaintiffs incorporated an image of the packaging for the Pain Relieving

Cream Lidocaine into their allegations.

Because it is plausible that a reasonable consumer would be misled by Defendant's labels

and omissions relating to the "maximum strength" or "max strength" representations, Plaintiffs'

GBL claims survive.

### C.    "Stay-Put Flexible Patch" and "Lasts Up to 12 Hours"

Plaintiffs allege that the packaging for the two patch products is misleading under New

York GBL sections 349 and 350 because they are not "stay-put flexible patch[es]" that "last[] up

to 12 hours."  Defendant counters that "stay-put flexible patch" is non-actionable puffery and

that "lasts up to 12 hours" is not materially misleading.  Defendant's arguments are not

persuasive.

The question whether "stay-put flexible patch" is non-actionable puffery cannot be

resolved at this stage.  The Second Circuit has recognized two types of puffery.  The first

encompasses "[s]ubjective claims about products, which cannot be proven either true or false."

*Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 59 (2d Cir. 2022) (citing *Time Warner

Cable, Inc. v. DIRECTV, Inc*., 497 F.3d 144, 159 (2d Cir. 2007)).  These statements are often

"exaggeration[s] or overstatement[s] that mention nothing specific, but rather amount to general

claim[s] of superiority expressed in broad, vague, and commendatory language that are

considered to be offered and understood as an expression of the seller's opinion only."  *Int'l

Code Council, Inc.*, 43 F.4th at 59-60 (citation and quotation marks omitted).  The second type of

puffery encompasses "exaggerated, blustering, and boasting statement[s] that are objective—and

therefore technically provable—but upon which no reasonable buyer would be justified in relying." *Id.* at 60 (citation omitted).  When the disputed language might fall into the second category, the Second Circuit has cautioned that the 'reasonable buyer' analysis is a fact-intensive inquiry that "typically should not be resolved on a motion to dismiss," unless the statement is so patently hyperbolic that a claim that it misled consumers is facially implausible. *Id.*

Here, contrary to Defendant's assertions, "stay-put flexible patch" is not such a subjective and vague statement that it falls into the first category.  Whether the patch tends to remain adhered to users' skin and flex along with their movements during a typical period of use is an objective question.  Additionally, "stay-put flexible patch" is not so patently hyperbolic that it can be deemed puffery as a matter of law.  It is therefore premature to conclude that "stay-put flexible patch" is non-actionable puffery.  *See id.* at 61.

Next, Defendant argues that "lasts up to 12 hours" is not materially misleading because no reasonable consumer would interpret that phrase as a *guarantee* that the patches would adhere to their bodies for 12 hours.  To the contrary: the amended complaint raises a plausible inference that a reasonable consumer would be misled by Walmart's packaging on the two patch products. After reading directions that state that a user should use one patch for "up to 12 hours," a reasonable consumer would indeed plausibly expect to be able to use a single patch for a period approaching 12 hours.  *See Stevens*, 2022 WL 3681279, at *3.  Further, Plaintiffs do not allege that 12 hours is a guarantee; rather, they allege that the patches systematically fail to adhere for a time period close to 12 hours.  (*E.g.*, ECF No. 16 ¶ 35.)

Defendant also contests Plaintiffs' assertion that it made material omissions by failing to disclose that the patches are "prone to even greater detachment when [consumers] engage in moderate exercise or other regular daily activities."  (*See* ECF No. 24 at 19.)  According to

Defendant, Plaintiffs have failed to state a plausible deception-by-omission claim because they do not "plausibly allege that Walmart alone possessed material information" regarding the possibility of detachment and failed to provide it to customers.  (ECF No. 24 at 19-20.) Defendant also contends that Walmart had no obligation to state the obvious — that is, that the patches could detach when the user is mobile.  Defendant's arguments are unavailing because "[j]ustifiable reliance by the plaintiff is not an element of [a] statutory claim" under GBL § 349 or §350, and in any event, resolving the question whether Plaintiffs should have discovered on their own initiative whether the patches could withstand moderate exercise or other daily activities is premature at this stage.  *See Stevens*, 2022 WL 3681279, at *3 (citing *Bassaw v. United Indus. Corp.*, 482 F. Supp. 3d 80, 88-89 (S.D.N.Y. 2020)).

Because it is plausible that a reasonable consumer would be misled by Defendant's labels and omissions relating to the "stay-put flexible patch" and "up to 12 hours" labels, Plaintiffs' GBL claims survive.

### D.   Nationwide Consumer Class Action Claims

Finally, Defendant argues that Plaintiffs lack Article III standing to represent putative class members whose claims are governed by the laws of states other than New York.  In considering this question, the Second Circuit has made clear that "as long as the named plaintiffs have standing to sue the named defendants, any concern about whether it is proper for a class to include out-of-state, nonparty class members with claims subject to different state laws is a question of predominance under Rule 23(b)(3)" rather than an issue of Article III standing. *Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88, 93, 96 (2d Cir. 2018). As explained above, the three named Plaintiffs have standing to bring their New York General Business Law claims against Walmart, so any variation in the analogous state consumer protection laws is a question reserved for the class certification stage.  While Defendant protests

that *Langan* is at odds with the Supreme Court's precedents in *Warth v. Seldin*, 422 U.S. 490, 502 (1975), and *Lewis v. Casey*, 518 U.S. 343, 357 (1996), there is no basis to deviate from the crystal clear Second Circuit precedent established in *Langan*.

Separately, Defendant contends that because Plaintiffs have dismissed their New York unjust enrichment claims, they cannot bring any unjust enrichment claim on behalf of the putative class.  The first step in resolving this issue is to consider whether Plaintiffs have Article III standing to bring the unjust enrichment claim on behalf of the members of the putative class.  They do.  "Article III standing concerns whether there is a sufficient case or controversy such that it is appropriate for the parties to bring their troubles before a federal court for adjudication." *Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of Am., NA*, No. 12 CIV. 2865, 2013 WL 5328181, at *5 (S.D.N.Y. Sept. 23, 2013).  "Standing simply means that the plaintiff is entitled to walk through the courthouse door and raise his grievance before a federal court." *Baur v. Veneman*, 352 F.3d 625, 643 (2d Cir. 2003) (internal quotation marks omitted).  To reiterate the Second Circuit's guidance in *NECA-IBEW*, Article III standing exists in a class action where "for every named defendant there [is] at least one named plaintiff who can assert a claim directly against that defendant."  693 F.3d at 159.  That is clearly the case here: every named Plaintiff has stated a claim against Walmart under GBL sections 349 and 350.  While no named Plaintiff has an unjust enrichment claim against Walmart, each has standing because they have identified an injury (the purchase of the allegedly deceptively marketed lidocaine products), caused by Walmart, and redressable through suit in this Court.  *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 484 (1982) ("The requirement of standing focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated.").

The second part of the analysis is whether the named Plaintiffs have class standing to bring the unjust enrichment claim on behalf of the putative class.  That they do: they have plausibly alleged that they suffered actual injury under the GBL, attributable to Walmart.  And the misrepresentations alleged to have given rise to those injuries obviously implicate the "same set of concerns" as the misrepresentations alleged to have caused injury to the putative class members — the products and the packaging at issue are identical across the named Plaintiffs and the putative class.  *See NECA-IBEW*, 693 F.3d at 162.

The named Plaintiffs have standing to bring an unjust enrichment claim on behalf of the putative class.  Defendant's argument regarding the propriety of the named Plaintiffs bringing an unjust enrichment claim on behalf of the putative class members will be ripe for consideration at the class certification stage, when the Court considers the issue of typicality — whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  FED. R. CIV. P. 23(a).  *Cf. In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006) (citation omitted) ("The purpose of this requirement is to ensure that class representatives have the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions.").

## IV.    Conclusion

For the foregoing reasons, Defendant's motion to dismiss is DENIED.  Defendant shall file an answer within 21 days after the date of this opinion and order.

The Clerk of Court is directed to close the motion at ECF Number 23.

SO ORDERED.

Dated:  March 28, 2023
        New York, New York

J. PAUL OETKEN
United States District Judge